UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT W. STOKES, D.O.,

    Defendant.

                            /

No. 1:06-CR-94

Hon. Gordon J. Quist
United States District Judge

SUPERSEDING INDICTMENT

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this Superseding Indictment:

1.     Defendant Robert W. Stokes, D.O., was a board certified dermatologist, licensed to practice medicine in the State of Michigan.

2.     Defendant Stokes' medical practice was incorporated under the name "Robert W. Stokes, D.O., P.C." Defendant Robert Stokes was identified as the President and Registered Agent of the corporation at various times pertinent to this Superseding Indictment. Stokes' medical practice was located at 1815 Breton Road SE, Grand Rapids, Michigan.

3.     Defendant Stokes submitted claims to insurers, each of which was a health care benefit program as defined in 18 U.S.C. § 24(b), in that each was a private plan or contract, affecting commerce, under which medical benefits and services were provided to individuals. The insurers included but were not limited to Medicare, Blue Cross Blue Shield of Michigan (BCBSM), TRICARE and AETNA Insurance Company (AETNA). Claims were submitted either electronically or by mail to the insurance companies, approved by the insurers and paid by mailing a check to Defendant Robert Stokes' address of record.

## BLUE CROSS BLUE SHIELD OF MICHIGAN

4.     Defendant Stokes was a Blue Cross Blue Shield of Michigan (BCBSM) participating provider.

5.     BCBSM required physicians to provide a diagnostic code and a procedure code on claims in order to be paid for professional services rendered to BCBSM subscribers. Payment for services depended upon the specific diagnostic and procedure codes indicated on the claim form. BCBSM distributed payments to participating providers by sending checks through the United States mail.

## AETNA, INC.

6.     Defendant Stokes was an AETNA participating provider.

7.     AETNA required physicians to provide a diagnostic code and a procedure code on claims in order to be paid for professional services rendered to AETNA subscribers. Payment for services depended upon the specific diagnostic and procedure codes indicated on the claim form. AETNA distributed payments to participating providers by sending checks through the United States mail.

## MEDICARE

8.     Defendant Stokes was a Medicare participating provider.

9.     The Centers of Medicare and Medicaid Services (CMS) was an agency of the United States responsible for administering the provisions of the federal Medicare Program ("Medicare"), which provided health insurance to the aged and disabled under the provisions of the Social Security Act. Medicare benefits were provided by law to most persons who had attained the age of 65 and to certain disabled persons. Medicare coverage included "Part B" benefits, which authorized payments for professional services rendered by physicians.

10. Wisconsin Physicians Services (WPS) contracted with CMS to process "Part B" claims in the State of Michigan. Pursuant to that agreement, WPS distributed federal Medicare funds to Michigan physicians who filed claims for payment.

11. WPS required physicians to provide a diagnostic code and a procedure code on claims in order to be paid for professional services rendered to Medicare beneficiaries. Payment for services depended upon the specific diagnostic and procedure codes indicated on the claim form. WPS distributed payments to participating providers by sending checks through the United States mail.

## TRICARE PROGRAM

12. Defendant Stokes was a TRICARE participating provider.

13. TRICARE was a worldwide health care program for active and retired uniformed service members and their families. TRICARE contracted with various agents to administer the claims processing for its beneficiaries. Health Net Federal Services was the contractor responsible for administering the TRICARE Program in Michigan. TRICARE required physicians to provide a diagnostic code and a procedure code on claims in order to be paid for professional services rendered to TRICARE beneficiaries. Payment for services depended upon the specific diagnostic and procedure codes indicated on the claim form. Health Net Federal Services, acting as an agent for TRICARE, then distributed payments to participating providers by sending checks through the United States mail.

## SCHEME TO DEFRAUD

14.     Paragraphs One through Thirteen are incorporated herein by reference.

15.     Beginning in or about August 2001 and continuing to at least December 2004, the exact dates being unknown to the grand jury, in Kent County, in the Western District of Michigan, Southern Division, and elsewhere,

ROBERT W. STOKES, D.O.,

knowingly and willfully executed a scheme and artifice to defraud and to obtain money from health care benefit programs, including, but not limited to, the health care benefit programs identified in Paragraph Three, by means of false and fraudulent pretenses and representations in connection with the delivery of and payment for health care services.

16.     The purpose of the scheme and artifice to defraud was for Defendant Stokes to obtain payments to which he was not entitled from the health care benefit programs for medical services that were not rendered or were not rendered as billed.

17.     Defendant Stokes executed his scheme and artifice, in part, by routinely "upcoding" office surgical procedures. In order to receive reimbursement for services rendered to a patient covered by a health care benefit plan, Stokes was required to identify the service or procedure performed by a code that appeared in a manual called "Current Procedural Terminology" (CPT). Payment of Stokes' claims depended in part on the complexity of the procedure as reflected in the CPT code submitted on the claim form. By submitting CPT codes that reflected a more complex level of service than the service he actually provided, Stokes obtained a higher level of reimbursement than that to which he was entitled.

18.     Defendant Stokes executed his scheme and artifice by upcoding claims submitted to one or more of the insurers identified in Paragraph Three for performing a procedure known

as an "adjacent tissue transfer" when he in fact performed a less complex procedure. An adjacent tissue transfer is a procedure for repairing a defect in the skin by creating a flap of skin, called an advancement flap, that is then rotated to cover a defect created by the removal of a lesion. By submitting the CPT code for adjacent tissue transfers on claims forms, Stokes obtained higher levels of reimbursement than that to which he was entitled.

19.    Defendant Stokes further executed his scheme and artifice by upcoding claims submitted to one or more of the insurers identified in Paragraph Three for performing lesion removals. CPT codes for lesion removals were based upon the size, thickness and nature of the lesion removed: the larger the lesion and the thicker the tissue removed during the excision, the higher the rate of reimbursement. For example, removal of a lesion that measures 0.5 cm or less is reimbursed at a lower rate than removal of a lesion that measures between 0.6 and 1.0 cm. Likewise, full thickness (through the dermis or skin) excisions were reimbursed at a higher rate than shaved (removing the top layer of the skin) excisions. Finally, excisions of malignant lesions were reimbursed at a higher rate than removal of benign lesions. To obtain more reimbursement than that to which he was entitled, Stokes billed BCBSM, Medicare and other insurance companies for full thickness excision of malignant lesions when, in fact, he performed a shaved or surface removal of lesions which were often of a benign nature, and he billed BSBSM, Medicare and other health care benefit programs for removing larger lesions than the lesions that he in fact removed. This practice also defrauded patients of the right to honest and faithful services, i.e., appropriate evaluation and management of their medical condition.

20.    Defendant Stokes also executed his scheme and artifice, in part, by billing for services that he did not render.

21.     Defendant Stokes executed his scheme and artifice by billing BCBSM, Medicare and other insurance companies for office visits that were not separately reimbursable. When providers bill insurance companies for office surgical procedures, the reimbursement they receive for the procedure includes the office visit. A provider was entitled to separate reimbursement for the office visit if, and only if, the provider indicated on the claim that the office visit was for a significant, separately identifiable evaluation performed on the same day as the procedure. Stokes received reimbursement for both procedures and office visits by indicating that the office visits were to treat a condition, specifically impetigo (a bacterial skin infection that occurs primarily in children), different from the office procedure when, in fact, the patient did not suffer from and was not treated for that condition.

22.     Defendant Stokes also executed his scheme and artifice by billing BCBSM, AETNA and TRICARE for laboratory services that he did not render. In order to receive reimbursement for a service, a participating provider, such as Stokes, must certify that he personally performed the service and that the service was performed at his office. Stokes routinely billed BCBSM, AETNA and TRICARE for laboratory services that were rendered by independent outside laboratory facilities and then billed to Stokes. Moreover, Stokes not only billed for the services that he did not perform, but he inflated the cost of the service by adding a "mark-up" to his costs.

## COUNTS ONE THROUGH TWELVE
(Health Care Fraud - Adjacent Tissue Transfers)

23.  Paragraphs One through Twenty-two are incorporated as though fully set forth herein.

24.  On or about the dates set forth below, in the Western District of Michigan, Southern Division,

ROBERT W. STOKES, D.O.,

knowingly and willfully executed the previously described scheme and artifice by submitting claims for adjacent tissue transfers that were not performed, involving the patients, dates of service and health care benefit programs described below, all in violation of Title 18, United States Code, Section 1347.

| COUNT | INSURER | DATE OF SERVICE | PATIENT(S) |
|---|---|---|---|
| 1 | Medicare | 04/29/02 | Patient DJ |
| 2 | Medicare | 06/05/03 | Patient PH |
| 3 | Medicare | 08/05/02 | Patient ES |
| 4 | Medicare | 11/18/03 | Patient AS |
| 5 | BCBSM | 05/08/03 | Patient PH |
| 6 | BCBSM | 05/16/02 | Patient EU |
| 7 | BCBSM | 09/13/02 | Patient AB |
| 8 | BCBSM | 09/25/02 | Patient PR |
| 9 | BCBSM | 02/25/02 | Patient JW |
| 10 | BCBSM | 02/13/03 | Patient RM |
| 11 | BCBSM | 02/13/03 | Patient GV |
| 12 | AETNA | 02/13/03 | Patient AS |

## COUNTS THIRTEEN THROUGH TWENTY-ONE
(Health Care Fraud - Full Thickness Excisions)

25. Paragraphs One through Twenty-four are incorporated as though fully set forth herein.

26. On or about the dates set forth below, in the Western District of Michigan, Southern Division,

ROBERT W. STOKES, D.O.,

knowingly and willfully executed the previously described scheme and artifice by submitting claims for full thickness excisions that were not performed, involving the patients, dates of service and health care benefit programs described below, all in violation of Title 18, United States Code, Section 1347.

| COUNT | INSURER | DATE OF SERVICE | PATIENT(S) |
|---|---|---|---|
| 13 | Medicare | 11/12/01 | Patient DJ |
| 14 | Medicare | 07/20/01 | Patient LF |
| 15 | BCBSM | 06/20/02 | Patient WB |
| 16 | BCBSM | 11/01/01 | Patient MD |
| 17 | Medicare | 02/13/03 | Patient PB |
| 18 | Medicare | 02/13/03 | Patient LE |
| 19 | Medicare | 02/13/03 | Patient DP |
| 20 | Medicare | 06/13/03 | Patient VB |
| 21 | Medicare | 06/13/03 | Patient RW |

## COUNTS TWENTY-TWO THROUGH TWENTY-FIVE
(Health Care Fraud - Lesion Size)

27. Paragraphs One through Twenty-six are incorporated as though fully set forth herein.

28. On or about the dates set forth below, in the Western District of Michigan, Southern Division,

ROBERT W. STOKES, D.O.,

knowingly and willfully executed the previously described scheme and artifice by submitting claims for the excision of lesions, claiming that the lesions were larger than those actually removed, involving the patients, dates of service and health care benefit programs described below, all in violation of Title 18, United States Code, Section 1347.

| COUNT | INSURER | DATE OF SERVICE | PATIENT(S) |
|---|---|---|---|
| 22 | Medicare | 11/12/01 | Patient DJ |
| 23 | Medicare | 07/20/01 | Patient LF |
| 24 | Medicare | 02/13/03 | Patient LE |
| 25 | Medicare | 02/13/03 | Patient DP |

COUNTS TWENTY-SIX THROUGH THIRTY-SEVEN
(Health Care Fraud - Impetigo)

29. Paragraphs One through Twenty-eight are incorporated as though fully set forth herein.

30. On or about the dates set forth below, in the Western District of Michigan, Southern Division,

ROBERT W. STOKES, D.O.,

knowingly and willfully executed the previously described scheme and artifice by submitting claims for office visits that were not separately reimbursable, falsely claiming that he evaluated and treated the condition known as impetigo, involving the patients, dates of service and health care benefit programs described below, all in violation of Title 18, United States Code, Section 1347.

| COUNT | INSURER | DATE OF SERVICE | PATIENT(S) |
|---|---|---|---|
| 26 | Medicare | 11/12/01 | Patient DJ |
| 27 | Medicare | 04/29/02 | Patient DJ |
| 28 | Medicare | 07/20/01 | Patient LF |
| 29 | Medicare | 009/30/02 | Patient RC |
| 30 | BCBSM | 08/15/01 | Patient MB |
| 31 | BCBSM | 08/31/01 | Patient MB |
| 32 | BCBSM | 11/01/01 | Patient MD |
| 33 | BCBSM | 05/08/03 | Patient PH |
| 34 | BCBSM | 04/02/02 | Patient BM |
| 35 | Medicare | 02/13/03 | Patient PB |
| 36 | Medicare | 02/13/03 | Patient LE |
| 37 | Medicare | 06/13/03 | Patient RW |

## COUNTS THIRTY-EIGHT THROUGH SEVENTY-TWO
(Health Care Fraud - Laboratory Services)

31.     Paragraphs One through Thirty are incorporated as though fully set forth herein.

32.     On or about the dates set forth below, in the Western District of Michigan, Southern Division,

ROBERT W. STOKES, D.O.,

knowingly and willfully executed the previously described scheme and artifice by submitting claims for laboratory services that he did not perform, involving the patients, dates of service and health care benefit programs described below, all in violation of Title 18, United States Code, Section 1347.

| COUNT | INSURER | DATE OF SERVICE | PATIENT(S) |
|---|---|---|---|
| 38 | BCBSM | 04/23/02 | Patient PW |
| 39 | BCBSM | 06/24/02 | Patient GC |
| 40 | BCBSM | 07/16/02 | Patient SM |
| 41 | BCBSM | 08/14/02 | Patient RB |
| 42 | BCBSM | 10/22/02 | Patient RB |
| 43 | BCBSM | 11/27/02 | Patient DM |
| 44 | BCBSM | 01/14/03 | Patient RM |
| 45 | BCBSM | 01/15/03 | Patient GV |
| 46 | BCBSM | 01/28/03 | Patient DM |
| 47 | BCBSM | 01/28/03 | Patient KC |
| 48 | BCBSM | 02/11/03 | Patient DG |
| 49 | BCBSM | 02/11/03 | Patient PW |
| 50 | BCBSM | 02/18/03 | Patient RB |
| 51 | BCBSM | 03/18/03 | Patient RG |
| 52 | BCBSM | 06/12/03 | Patient KC |

| 53 | BCBSM | 03/09/04 | Patient DW |
| --- | --- | --- | --- |
| 54 | BCBSM | 02/13/04 | Patient SB |
| 55 | BCBSM | 02/24/04 | Patient SB |
| 56 | BCBSM | 05/14/04 | Patient AD |
| 57 | BCBSM | 08/03/04 | Patient AD |
| 58 | AETNA | 07/16/02 | Patient JD |
| 59 | AETNA | 01/07/03 | Patient RH |
| 60 | AETNA | 01/30/03 | Patient CJ |
| 61 | AETNA | 02/13/03 | Patient AS |
| 62 | AETNA | 05/27/03 | Patient JC |
| 63 | AETNA | 07/10/03 | Patient NH |
| 64 | AETNA | 01/02/04 | Patient JA |
| 65 | AETNA | 01/16/04 | Patient JH |
| 66 | AETNA | 05/25/04 | Patient JE |
| 67 | AETNA | 11/03/04 | Patient TC |
| 68 | TRICARE | 06/25/02 | Patient SW |
| 69 | TRICARE | 12/23/02 | Patient JF |
| 70 | TRICARE | 06/07/04 | Patient LK |
| 71 | TRICARE | 06/03/04 | Patient RB |
| 72 | TRICARE | 08/09/04 | Patient JF |

## COUNT SEVENTY-THREE
(Forfeiture Allegations)

33.     As the result of committing the offenses of health care fraud in violation of Title 18, United States Code, Section 1347, alleged in Counts 1 through 72 of this Superseding Indictment, which Counts are hereby realleged and incorporated by reference, Defendant Robert W. Stokes, D.O., shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7) all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to the following:

Money Judgment:  a sum of money equal to $1,038,271.00 in United States currency, representing the amount of proceeds obtained as a result of the offenses of health care fraud.

18 U.S.C. § 982(a)(7)
18 U.S.C. § 1347


A TRUE BILL

_____
GRAND JURY FOREPERSON

MARGARET M. CHIARA
United States Attorney

_____
RAYMOND E. BECKERING III
Assistant United States Attorney